Thank you, Madam Clerk. Please be seated. The last case on the calendar is, well actually consolidated, 25-1677 and 25-2637, American Federation of Government Employees v. Office of Personnel Management. If you'd just give us one minute here, we're ready to hear your argument. I just need you to stop shuffling papers. All right. I think we're ready. Good morning, Your Honor, and may it please the Court. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. Sure. This appeal concerns two preliminary injunctions, both of which are fatally flawed. The first, which ordered reinstatement of thousands of federal employees at the behest of third-party organizations, has already been stayed by the Supreme Court because those organizations lack standing. This Court should follow the Supreme Court's directive and reverse that injunction. The second injunction required defendants to send letters to terminated employees at the behest of the District Court regarding the reasons for their termination. The District Court ordered that relief based on the claims of plaintiff unions. But those unions have a mechanism for challenging agency personnel action, and it isn't an APA lawsuit in federal district court. Instead, their claims must be channeled through the comprehensive, integrated, administrative judicial review scheme that Congress designed for precisely that purpose. What's more, the District Court continues to superintend the agency's relationship with their terminated employees based on that injunction. Next week, for example, the agencies will be required to bring hard copies of hundreds of revised letters to the District Court to assure compliance with the Court's demands. I think you're exceeding our record now, right? We're going to try really hard to leave the summary judgment briefing and argument aside and focus on what we've got in front of us. Certainly, Your Honor. As to those revised letters, that's a — You're talking about the second injunction now? Yes. Okay. And, Judge Brest, those letters that I was referring to, certainly they had not occurred at the time that the government filed this appeal. But given the plaintiff's suggestion that this appeal is moot because the government's sending of letters can't be undone — That's a point you've argued. Okay. Go right ahead. So as to those revised letters, that's simply to emphasize that the District Court continues to exercise jurisdiction over enforcement of that injunction.  I'm just asking if you can confine yourself to our record, that would be helpful, because there's a lot of these cases. That's all I'm asking. Yes, Your Honor. What's the ongoing hardship of the second injunction? So, Your Honor, I think it's twofold. One is that the District Court continues to make demands as to the particulars of those letters. And so, as I mentioned, next week, the — our team in the District Court will need to provide copies of particular revised letters to include the particular names and addresses of terminated employees. And so the District Court continues to make demands as to the content of those letters that were sent. And so — My understanding of the argument that you've — what you've briefed here is that the government continues to be aggrieved by the second injunction because you interpret it as preventing the government from issuing any kind of communication that states that you disagree with the — with the statement, the earlier statement, that the terminations were not for cause. Your Honor, that's right. And that was the second point that I was going to make, which is that the government continues to be bound to those letters that it was required to send out to those employees. And so the government is not able to, for example, send a subsequent letter saying we disagree with that letter, we never wish to send it. And so the government is still bound from agencies — from actions, rather, that the government may wish to take absent this binding injunction. But, I mean, let's just put aside the March injunction just for a second and pretend that all we have is the April injunction. Is the dispute really down to letters that you were ordered to provide and that your position is you have provided them? Presumably that will be adjudicated, but I understood your representations in the briefs to say we did not agree with this order, but we've complied with it. So then what going forward is really left? I mean, there's a lot of big legal issues here, but when I look at the case, I'm wondering what's actually at stake. Well, Your Honor, as to that second injunction and setting aside the reinstatement injunction that's been stayed by the Supreme Court, that second injunction does still require the agencies to kind of stand by those letters that it was required to send. And I think plaintiff's suggestion that simply because the letters have been sent and can't be unsent, there's no ongoing kind of burden or controversy, I think that misunderstands the agency's typical ability to have control over their relationship with their employees, including former employees. And so the district court's injunction precludes the agencies from perhaps sending additional letters that it might wish to send or clarifying the reasons for termination. Are those additional letters prohibited by the injunction? Your Honor, I don't know whether the district court would say that any particular letter is. I'm just wondering because, you know, you didn't want to send the letters. Nonetheless, you did. And so I'm kind of — and I hear you saying, well, we'd like to send further letters, but I don't know if those further letters are actually something you're permitted to do or not. Well, Your Honor, I think the terms of the district court's injunction, which required the agencies to make clear that terminations were not for performance-based reasons, I think the logic of that injunction would preclude a subsequent letter saying we do think that this was for performance-based reasons, because that would be fundamentally inconsistent with the injunction that the court ordered. And so even if the court's injunction by its terms does not say you cannot send subsequent letters that are inconsistent with the letter I ordered you to send, I think that it would be very difficult to maintain that sending a subsequent letter completely at odds with the first letter would be within the terms of the injunction. What was the point of having to send letters here? Your Honor, the district court reasoned that the terminated employees would suffer from having something in their record regarding performance-based termination. And so the district court determined that the proper remedy was for the agencies to clarify that they did not, in fact, terminate for those reasons. So wasn't this because, just to back up, I want to make sure I keep this straight, this was initiated, the terminations were initiated with a form letter, correct? And the allegation, which are unchallenged here, the allegation is that OPM directed the agencies to use a form letter. Some of them may have tweaked it or whatever. But the point is, to follow up on Judge Bress's question, the employees received letters terminating them, and this was the injunctive relief, I think, was in response to those first sets of letters that stated there were performance-based terminations. So this was a reputational harm that the district court was concerned about. Your Honor, it is my understanding that the district court was concerned about reputational harm. There the first letters that we're speaking of are the termination notices. They're part of the personnel record of these employees. The letters are not part of that personnel record. So it is kind of outside the scope of typical agency interactions with their employees, and I think that underscores the really unique nature of the relief that was ordered by that second injunction. And so you have a different, I appreciate that distinction, and I didn't understand it before. Would it matter if he had directed that on top of the letter in the personnel file indicating that there was a termination for cause, that there be a letter added to the personnel file indicating that that first original termination was not for cause? Would that change the outcome here? Your Honor, I don't think that would change the outcome here. But I think it just, again, serves to underscore this is a really unique remedy that was just outside the scope of these employment relationships, which are what was purported to be vindicated here. Right. So if we decide that the organizational plaintiffs lack standing, you're speaking now about relief that was granted pursuant to the first injunction. But going to mootness, which I think is the first issue that we're really taking up in substance, to follow up on Judge Bress's question, I think what you're saying is that even if we were to agree on your point that the first injunction, which was only directed to the organizational plaintiffs, should be reversed, that the government's position remains, is this right, that the government remains burdened by the second because of its inability to send a second letter? Is that right? Yes, Your Honor. And so our position is that both injunctions must be reversed. And neither injunction was warranted, and the district court did not have jurisdiction to enter either injunction. And so both as to mootness and as to the merits, I think the second injunction, like the first injunction, warrants reversal. Okay. So you started by – so let's get to that because you started by saying that Congress designed the statute for this purpose. How did Congress design the statute for – I think we know which statutes you're talking about, the two statutory schemes for the two agencies that we're going to be talking about today. How were they designed for this type of claim? Well, Your Honor, the CSRA, as the Supreme Court has recognized in Fausto and in Elgin, is made to be a comprehensive and integrated scheme, and it has very particular processes both for employees themselves and for their labor unions to pursue claims based on personnel actions that the labor union or the employee deems problematic. And so as to the labor unions, since those are the plaintiffs that are at issue in the second injunction, the labor unions have two avenues through that particular statutory scheme, the Federal Service Labor Management Relations statute. And they can pursue either of those. So the first is a grievance that then goes to arbitration. And so every collective bargaining agreement has a provision for binding arbitration where a labor union can bring a claim for a grievance, which is a term of art under the statute and the collective bargaining agreements. The union can take that grievance into binding arbitration. If the arbitrator rules against the union, then the union is able to file exceptions to that arbitral award with the FLRA and then can obtain review in a court of appeals. So if we take a step back, because your position is that the statutory schemes are designed for these types of claims. And we're talking about, of course, an ultra-virus claim and then several different APA claims. But the statutory schemes that you're talking about are statutory schemes that seem to me to be all about employee-employee relationships. And sometimes the union, of course, steps in in the hypothetical that you were just discussing. But in all those claims, the employer is the defendant, is the respondent. And so, of course, this is not a new or original thought, but the opposing counsel's argument is their client's claim isn't against the employing agencies. Their claims are that OPM exceeded its statutory authority. So under the one statutory scheme, the Merit Systems Protection Board, it can't even be sued unless it's being sued by one of its own employees. Right? And so this seems to me to be a real mismatch. Could you really engage with us, please, about when they're arguing about that these types of claims are not employer-employee claims? They're claims that OPM undertook an action, which Judge Elstrup has made a finding that they did for purposes of this argument that's unchallenged, that OPM directed the terminations. Well, Your Honor, as to these the types of claims, I think it's particularly relevant that in Elgin, the plaintiff was bringing constitutional claims and, in fact, in the Federal court lawsuit, sued the President and sued the United States, neither of whom could be a proper party in the MSPB. And yet the Supreme Court said even though the appellant was trying to bring a constitutional claim and was trying to sue parties that could not be sued in this administrative judicial review process, nonetheless, those claims were channeled because the heart of those claims was a termination decision. But isn't your harder claim the claim that came up through Judge Ilston's court? In that case, they weren't talking about probationary employees, but they're talking about Federal employees and very, very similar allegations, right, in terms of channeling. What the Supreme Court did in that case when they stayed our court's stay of that order was not a channeling decision. But the same arguments were made. That's right, Your Honor. And the Supreme Court in that stay decision stated that the government was likely to succeed on the merits of its appeal. Of its appeal. And they were very specific, though. They said in that case involved, and I think it's just terribly important to focus on that case, if you don't mind too much, an executive order and a memorandum, a couple of the same agencies, including Office of Personnel Management, directing agencies to come up with RIF plans. I mean, Judge Ilston was very, actually kind of funny a couple times in calling out, he's very aware that the Federal Government can engage in RIF plans. His concern was that the Office of Personnel Management took action in this case that he found, that he thought circumvented that by directly ordering, as you know, directly ordering those terminations. So in the American Federation v. Trump, the government argued channeling. That is not what the Supreme Court relied upon. What they said is that there hadn't been a showing of the likelihood of success on the merits of the underlying claim. That is, that there was anything wrong with ordering agencies to undertake and develop RIF plans. That's right, Your Honor. And the Supreme Court, I think, was able to choose among several independent reasons why — It doesn't typically skip over subject matter jurisdiction and go to the merits. Well, Your Honor, I think this was, again, a stay decision. It was incredibly short. And so I don't think that this Court should glean anything about the viability of these channeling arguments simply from the Supreme Court's decision to issue a ruling as to another independent ground for success. It's just that — so I appreciate your patience with my question. It's just that it's such a parallel case, so strongly similar, and they did not rely on channeling. So that's — maybe you don't have another response to that, but I wanted your reaction to it, please. Well, Your Honor, I think one other way that that case differs substantially from the case here is that, in this case, the plaintiff's asserted injuries are due to actual removal of employees. And in the — in Judge Ilson's case that went up in — on — after you beat Trump in this court and then was stayed by the Supreme Court, in that case, no RIF claim had actually occurred or was part of the record in that case. This was about — Have you forgiven me? When — this happens all the time with lawyers. You have this — you're so well-prepared, and then you do this shorthand lingo, FGV versus Trump. And I have — I'm still translating FGV. So, okay, American Federation of Government Workers versus Trump. In that case — I apologize, Your Honor. That's okay. It happens all the time, but it always amuses me. Go right ahead. It just means you're very well-prepared. In that case involving the RIFs brought by the American Federation of Government Employees, in that case as well, the plaintiffs were asserting harms based on a directive that had not actually materialized into any terminations at that time. And so there were no actual RIFs that had occurred. There were no personnel actions that had, in fact, materialized into removals and could have then caused injuries. And so I think in this case, we have those removals. Can you just finish that thought? That is distinguishable because — That's distinguishable because there's perhaps an argument, and again, the government would certainly dispute that, and maintains that channeling would be appropriate in that case. But setting that aside and just trying to draw the distinctions that may be relevant here, in that case, there were — there couldn't be challenges to effectuated Federal employment decisions, which are the types of actions that are covered by the CSRA and by the Civil Service Reform Act and the Federal Service Labor Management Relations Statute. But so are what broad, wide-scale RIFs, the plans to carry out those RIFs would be — would be as well. Your Honor, the — the plans to carry out RIFs are not subject to review because they — I mean, again, the government disputed that there was final agency action in that case because it was so preliminary. But again, just to draw that distinction, in that case, there just had not been any terminations. Even though plaintiffs brought up alleged plans and very preliminary plans for RIFs, those RIFs had not, in fact, occurred. They had no agent — no employees had been separated based on those RIF plans. And so the CSRA comes into play when you have a — a personnel action, an adverse action under the statute. And so I think, you know, there could be an argument in that case that because those personnel actions had not yet occurred, then there was not a way to go into that administrative —  Your Honor, I'm not certain. I don't think it was, but I think I've taken you down a rabbit hole. So press on, if you would, please. You were trying to explain. I think you're going to be getting ready to apply the factors that we need to be looking at here for Thunder Basin. Your Honor, so as to — as to channeling here, as I was saying, the particular claims that are at issue are challenges to terminations. And if we look at the — the asserted injuries that the plaintiffs assert, they are claiming that the unions are harmed in their ability to represent employees. That is precisely the type of injury and claim that the FLRA and FSL-MRS processes are meant to allow agencies to raise. So I understand — understand the distinction. It's almost like the government and the plaintiffs here are talking past each other because you're focusing on — I mean, if you look at all the relief as people getting reinstatement, it's all the same type of relief you would get individually if you could get it, which they can't because they're probationary employees. We put that aside for a second. Same thing. Let's say you do something and the agency would order individually you get some letter saying that you weren't actually fired for performance reasons. So I understand all that. The way they're trying to say it's like the — I'll call it the doge — we're calling it the doge case in our chambers, to distinguish it from this case. So it's called the doge case. The way they're — you know, this case is like the doge case in the sense that they're trying to kill — they're trying to avoid all that. They brought a lawsuit to avoid all that by going right at the very original action and saying that that's ultra vires. And so in that sense, it's not different. So I — you know, the more I think about it, it's kind of a crazy way to go after this because at the end of the day, immediately of them claiming that, you all said, no, that's not — we didn't — the OPM didn't direct us. Whether the OPM directed it or not, I mean, you immediately disclaimed it. Not only that, but the main thing that strikes me is that the OPM didn't fire anybody. Like, supposedly they told agencies to — but the agencies fired somebody. So what do we do with that? Does that have any effect on this? The fact that they're — you know, the way they're avoiding the channeling argument is to say OPM, OPM, OPM. They're not getting any relief against OPM except for relief that nobody cares about because OPM isn't even doing the thing that they — it's disclaimed that it's going to do. So what do we do with the fact that they have brought a challenge against OPM, but the relief they're all getting is from — is against the agencies. It's telling the agencies you have to rehire this person. It's saying the agencies improperly fired people. It's saying the agencies have to submit letters. It's adding the agencies as relief defendants. Like, so I — in some ways, the briefing doesn't really top it, but that is the core of this case, the weirdness of this case from my perspective, is that — and let me give you one — let me give you one hypothetical. Like, let's say some random person on Instagram starts posting, you should fire Joe because Joe is a racist. And the agency fires Joe. And then it says you should fire Sue because Sue is a Christian. And the agency fires Sue. You wouldn't sue the rando person on Instagram saying that they're acting altruvieras, right? Who would you sue? You'd sue the agency for — I mean, you wouldn't even sue the agency because you can't. You would bring an agency. So that's the weirdness of all this. So I don't — like, I'm trying to figure out — but somehow OPM is different than a rando person, I guess, because as long as you claim that OPM is the one that directed. I'm just trying to figure out, like, how that all — there's a problem here. It does seem to be circumventing an agency process, but it's doing it by grabbing a hold of an agency. But that agency never fired anybody. It didn't fire anybody itself. It supposedly told agencies to fire. So why can't you just go after the agencies? I don't — the whole thing is, like, very confusing to me as to why they couldn't just go after the agencies. Your Honor, if I may be heard to answer Judge Van Dyke's question in my remaining time. I agree that this — Your time is still ticking down. You're fine. Thank you, Your Honor. As to the weirdness of this case, I think we completely agree. And it is a strange challenge. And I think that underscores why it's incompatible with this very comprehensive and integrated — you know, the Supreme Court has repeatedly emphasized that this is meant to be a comprehensive scheme. But those are employer-employee relationships. And unless I'm really mistaken, what Judge Altsup was concerned about is the scheme being circumvented. He's made a finding that this direction was made directly. Our understanding from this briefing is that the government is not contesting in this proceeding that OPM could not have made that. That would have been ultra-virus. Is that correct? Your Honor, we do not contest that OPM did not have the authority to terminate employees outside its walls. But we — Right. And that finding has been made here. And it's not challenged, you know, for today, for what we're doing. I fully appreciate that your contention is that you didn't do that. OPM didn't do that. And the record that Judge Altsup had was — has the written communications that we've all read, February 12th, February 14th, and whatnot. And then there's this allegation that's much murkier about phone calls where apparently the allegation is direct — directions were made where there was no discretion. We are not going to decide any of that here. We're just trying to decide which forum has subject matter jurisdiction. So — right? So it's terribly important that we get the subject matter jurisdiction right, hence the channeling discussion. Yes, Your Honor. What's goofy about that? It seems to me that does need to be job one for us. Your Honor, I completely agree that that is the key to this appeal, is ensuring that claims that should not be brought in Federal district court may not be brought in Federal district court. And the plaintiff's claims are precisely that type of claim. And that's because the — as you mentioned, Your Honor, the claims that are meant to be brought through this comprehensive channeling scheme are those that go to the core of the employer-employee relationship. And the ultimate action that caused the alleged injuries — and, again, I think those injuries are speculative. We set aside the first injunction for the most part at the beginning of this argument. But as the Supreme Court set forth, those injuries are speculative. As to the unions, again, their asserted claims are injuries to their employees and injuries to their ability to bargain. And I understand your — I understand your position is they could go to that process and make the argument that these firings were improper because they were improperly directed by OPM, and that adjudicatory process could vindicate that and conclude, in fact, that the plaintiffs are correct and that these firings were improper. You don't need the OPM to be a defendant or a party in that process in order to be able to achieve that result. That's right. How is it possible that it would adjudicate what actually happened? That's your defense, is that OPM didn't make this — didn't take this step. Well, Your Honor, if I may, the FLRA has broad jurisdiction to hold hearings, to make fact-finding. Isn't that OPM being present? Your Honor, I am not certain as to the particulars of how it could bring in particular fact-finding. I'm not trying to give you a hard time, but I'm quite surprised by your response to Judge Bress's question, because — and maybe we should pause here, because I've been envisioning that there's this quite a bit, a factual dispute about whether or not these phone calls were made or whether there was or was not a direction to fire the employees where there was no discretion whatsoever. And that, as I said, we're just trying to figure out which forum is going to slog through all of that. For purposes of today, the government hasn't contested it. But what I heard you say is that in response to Judge Bress's question, that this could go forward without OPM? Your Honor, yes. A proceeding in the FLRA or in the MSPB could go forward without OPM. And I think that this really goes as well to Judge Van Dyke's point, which is that the entities that actually did the terminations, that actually removed these employees, are their employing agencies. And that's why plaintiffs had to — But they don't have claims against those. That's not what their claim is, though. The type of claim, that's what that's what acts on, that's what Thunder Basin asked us to look at. The types of claims that they are asserting are not that. They're asserting that OPM acted beyond the scope, as you know, acted outside the scope of its statutory authority, and then some other APA claims in conjunction with that. But that's not who they want to sue. That's not their claim. Your Honor, they don't — I don't understand the plaintiffs to contest that the entities that actually did the removals, that did the terminations, are the employing agencies. And the question is whether they did so of their own volition or because they were directed to do so by OPM, allegedly. I mean, I don't see why that argument couldn't be aired in the FLRA process. That's exactly right, Judge Bress. And that's why I answered your question as I did, which is that the agencies can then go in and say, and this is something that's happened in the district court since this appeal, and go forward and discuss in discovery and hearings who made the decisions, when they made the decisions, if they were directed to make the decisions. And those are precisely the sorts of issues that can go forward in the administrative review scheme for the federal labor unions. And can I follow up on that? Because it seems to me like I'm trying to figure out why OPM would need to be involved in that. Because it seems to be one of two answers. The agency comes in and says, yeah, we only did it because OPM told us. I really liked Joe. I didn't want to fire him. But we fired him because OPM said we had to. Well, that's — I mean, the government has already admitted that would be unlawful, so it seems like that would be an easy reason to reinstate the person because you just committed. And the other option would be that the agency comes in and says, no, we fired him because we fired him. We made a decision to fire him. One of those two answers that's going to be the answer is kind of a binary thing, I think. And so it's not clear to me what role OPM has to play in that. So, I mean, the other argument I thought, I thought their other argument was, yeah, but these are probationary employees, so most of them can't even do that. So, Your Honor, that's right as to the CSRA process for employees themselves. And the probationary employees could not bring independent claims on their own behalf. But, again, we don't have plaintiffs that are probationary employees in this case. There are no individual employees who joined as plaintiffs. And so as to that second injunction, we have just labor unions. And so they would be proceeding through the FLRA channeling scheme. And that channeling scheme includes the ability to make allegations regarding unfair labor practices. Counsel, you have four and a half minutes over your time. So I'm going to stop you there. We'll put two minutes on the clock when you come back. But we'll hear from opposing counsel now. Thank you, Your Honor. Thank you. Good morning. Good morning. Danielle Leonard from Alt Shuler-Brezon on behalf of the plaintiffs' appellees. I'm going to start where the Court was just going on channeling, although I was originally going to start this argument today on the mootness points, because I think that the Court need not reach these channeling arguments. But I want to ensure that there are certain points that are absolutely responded to, because there were some statements about the record, both in this case and the other, that were certain things to go through administrative agencies that I want to correct and really get to the heart of. But I will come back. I will certainly come back. If you could just get on with it, that would be great. Just jump right in. Sure. So, Judge Van Dyke, to answer your question as to you're not sure why OPM needs to be part of the process or not, the claims are against OPM, certainly. And they are not only, Judge Bress, about the fact of the termination, but they're also, in this case, about the manner in which OPM instructed through essentially a new rulemaking for the agencies to redefine performance and use performance. Let me ask you my hypothetical about that. Let's say you're in some — I'm going to take somebody outside the government, but I suppose they could be just some random person in the government, you know, some random government employee. I would use myself, but unfortunately I'm a judge, and then that complicates things. And they just start posting that certain people should be fired, and they're posting they should be fired on completely inappropriate grounds, right? You know, religion, race, things like that. And the agency just keeps firing them based on — the agency seems to be following what they're doing. And so it seems like, and you're their attorney, it seems like you've got two choices. We could go through this agency process, but you're also a probationary employee, et cetera. And so maybe that's — or what we could do is we could sue both the Instagram influencer and the agency, and now we can argue that this channeling isn't appropriate here because it's really inappropriate that this Instagram influencer — okay, let's just assume that they're a low-level government employee — is acting ultra-virus. And you would get the same relief, same thing here. You would get people reinstated. You would get letters saying you weren't fired for performance reasons, contrary to — and I just don't — I don't see how that's distinguishable. Why is that distinguishable? It's distinguishable — first of all, the Supreme Court has never said this question turns on the scope of the relief, number one. It turns on the nature of the claim and the actor who it is asserted against. And here the defendant — But my — that's the point of my hypo, is that I was trying to come up with, if you just — you're just adding an actor. That seems completely — my whole point is, it seems completely unnecessary to add OPM because you could — it seems unnecessary to sue OPM here because nobody's actually being fired by OPM. OPM is like — whether or not OPM is — it takes two to tangle, let's put it that way. You have — it takes an agency to actually fire. If the agency had said, you don't have authority, pound sand. Why didn't the agencies do that? So, Your Honor, when Congress enacted — created OPM, it said that OPM was subject to the APA. When it creates and issues directives that affect the entire Federal Government, in the text of the very statute that they are saying took away judicial review under the APA, Congress said OPM three times was subject to the APA. No, but the difference in this and most cases where you're suing an agency for acting ultra vires is that, in most cases, you — the agency's gone and done something that — that directly affects people, and it doesn't go through a summary. But here, it had to go through — through OPM's supposedly unlawful actions, had to go through other agencies, and the more direct way to stop that is to say, agency, you can't fire people this way. That's never how been the — the APA has been treated by the Supreme Court, and the command of judicial review for government-wide action has never been treated that way. You don't — you do not have to wait until the actual — all the implementing effects — I mean, the way that's dealt with a lot of times is, you know, it's not final agency action or something like that, because, you know, some agency makes some decision, tells another agency, but something hasn't happened. So you're waiting until the actual action ends up happening. That's actually not how the APA has been treated under Bennett v. Speer by the Supreme Court, Your Honor. And the — the conclusive decision-maker here was OPM. OPM made the decision that people should be fired, and this is how they should be fired. That's the action that is the subject of the claim. It is absolutely — I guess what I'm getting at is, what if none of the other agency — what if the rest of the agencies had just said, yeah, thanks, but you don't have authority to tell us what to do? They didn't, as a matter of fact, Your Honor. And this Court is bound by those factual findings. This Court is bound by those factual findings. OPM gave the directive both as to the firing and to how. That is covered by the APA. Okay. So the judge — as I understand it, Judge, also the conclusion was that they — that they did direct. I don't know that Judge Alsop necessarily said that the agencies, like, thought that they had to follow that direction. It's a question — Mountain of evidence, Your Honor. That's exactly what Judge Alsop found. But the point is, this is not a question for this Court of what's a better system to set up. The question is, what did Congress intend? And we looked at the text of the statute. The government's argument here, both about the CSRA and the MSPB, but also the FLRA, the government's argument is not grounded in text. It is grounded in purpose and objective. They rely on Block to say, if you can't bring this before the agencies — and they admit that. They actually admit that they can't — you cannot sue OPM before these agencies for the actions that OPM took that are subject to the APA. They say, if you cannot do that too bad, that's what Congress intended. There's not a shred of text on which they ground that. I thought their point was that if you want to get reinstatement for your, you know, members of the unions, you can achieve that objective and argue that OPM exceeded its authority through the FLRA process. So that is one of their points, that if you want that remedy. But you can't stop OPM from taking its unlawful action. And you can certainly cannot hold OPM's actions unlawful and set aside as exceeding authority, arbitrary and capricious, or procedurally unlawful, which they certainly were. Those agencies cannot provide the relief that plaintiffs saw in this case, which was not only the relief that I would say through the relief entities. It was also relief directed at OPM. And those agencies cannot provide that. And Congress did not intend to do that. But what's the relief that's directed at OPM specifically? Because you have all this other relief, reinstatement, et cetera. But what's the relief for OPM? The relief is, don't do this anymore. Don't direct. Which, as I understand it, OPM has been denying they ever did, but more importantly for the purpose of our President, has said, we're not going to do that. So they issued a two-sentence correction. They never rescinded the redefinition of performance, Your Honor. And the relief is not only don't do the firings that you already did. Those had already taken place. That's not the only relief that is sought in this case. Let's talk about the performance for a second, because it seems like you have at least two concepts of performance. As I was reading the government's performance and then yours and Judge Alsop's view of performance, I understand the idea that if you get fired for performance, that's bad to have on your employment record. But encompassed in that is a concept that you were, like, fired for stealing or some sort of that. That's what we typically would think of when we say fire performance. But the government's view, as I understood it, was that we are basically raising the standard of performance. And that's certainly legitimate. I mean, we all are very familiar with different, you know, to get one job requires a different level of performance than another job. And as I understood it, what the government was basically saying, what OPM was telling agencies they should do, is that they should take the level of performance up to, to quantify it, 99 percent. They weren't saying you need to fire every provision. They were saying mission critical people or somebody that you absolutely. So they're basically just changing performance from, say, 30 percent level of performance. And so why is that wrong? Judge Alsop really jumped on a thing that this was not performance. And I think what he meant when he did that is he thought this is not performance in the sense of, like, you stole something or something what would be. But there is a sense in which it clearly was performance. They raised the level to where you had to perform at the kind of level you would take to get into Yale Law School, say, right? Like, you see what I'm saying? You have to have a certain level of performance to get into Yale Law School that you don't have. And that's performance, right? And so why is that wrong? So, first of all, the government has conceded that OPM didn't have the authority to do this. So if the court is going to address whether this is lawful or not, which is where you're going to be. Wait, wait, wait. Let's be really clear about this. They've conceded that OPM did not have the authority to direct them to fire people. Is that what you're saying? Yes. And they've also conceded liability with respect to this appeal. They're not arguing that the preliminary injunction should be reversed on that ground. So that would be a truly advisory opinion. But it is also your description of the facts are not the facts in this case. That's not what OPM did. But more importantly, I think the point is just proven of why OPM needs to be in this case. Because if OPM redefines employment, that's a rule. That's subject to the APA. And the question for this Court is not whether individual employees can also go to these agencies or not and what Congress thought about that. It is what did Congress in the text of this statute think about APA claims. The Supreme Court has never confronted the issue of the competing lines of doctrines between the CSRA and the APA and what Justice Roberts has said is the command of judicial review. It is not a coincidence that in at least four cases, channeling was argued to the Supreme Court this term on emergency stays, and the Court did not. It's hard to know what to make of those. I mean, I think the concern one would have with your position is that a lot of challenges to employment decisions could just be restated as an APA claim. And then we're outside of this very comprehensive, you know, employee-slash-labor scheme. Sure. But this Court is not operating in a vacuum with respect to that because in the AFG-EV Trump case, this Court directly addressed that question and said what is at issue here is not just an amalgamation of a bunch of individual employment actions. But it seems to me that this is why it's so very important that OPM has to be the defendant, that the claims are against OPM. That's the type of claim we're talking about. We're not talking about any individual employment action. We're not talking about an agglomeration of employment actions. We're talking about an entirely different claim. That's correct. And actually, the Court that's done this to just follow up on Judge Bress's point. I think a lot of employment, and it's a very important point, a lot of wrongful determination cases could be morphed to become an APA loophole. That's not what this is. But I think it is a navigational hazard that would — that has to be recognized. Correct. Viet, the Ninth Circuit case that is frequently cited when an individual tacks on an arbitrary and capricious — There's not a need to sue OPM to get the relief that your clients want, right? I mean, you could sue the agencies that are the employers of your — of the union plaintiffs' members, and you don't need OPM as a defendant in order to get them their jobs back. But that's not the question, Your Honor, for this Court. The question for this Court is whether Congress intended to remove the judicial command of — No, that's — that's right. But I think this is a way of asking, should we presume that, given the availability of this other forum, given the availability of the relief that — that you're ultimately seeking there for reinstatement, whether we should essentially interpret the statute to also allow this other suit in district court? So it's really just a question of interpretation. I absolutely agree. And that form of interpretation, relying on purposes and objectives, that's blocked from 1984. That's not how we treat implied doctrines in 2025. There are textual indications that Congress did not intend to remove judicial review under the APA. They referred to the APA — Could you get into that granular — could you back up to the premise? Because you're — I — you're losing me here. If we're talking about the relief being — restoring these jobs and only restoring these jobs, my understanding is that what you wanted was a declaration that this exceeds the scope of OPM's authority and a declaration that they can't do this again. In order to get that, you have to have OPM. And so you're now talking about something very, very different. So could you go back up to this intersection so that I can follow the line of reasoning?  Absolutely. And Your Honor is absolutely correct. The relief is against OPM, hold unlawful, and set aside OPM's actions, also the procedural claim. That is — that does not reach all the way down into the agencies and just the terminations. So when you say the procedural claim — The procedural APA claim — What I just said is I thought you wanted a ruling that they can't do this again. That's correct, Your Honor. Okay. Both of those — That's the big difference. Well, Your Honor, those both result in hold unlawful and set aside. That's what the APA does. And so why has judicial review, the command, not been removed from all of those APA claims? Well, because Congress said OPM is subject to the APA in this very statute. I'm not trying to be hostile. I am trying to get you to engage with Judge Bress's, I think, very helpful question. Because his point, as I understood it, was you don't need OPM in this suit. I understand that. My colleagues have asked that question. Why do you need OPM in this suit if you're really just looking to get these jobs back?  And I'm trying to explain why we need OPM, because the actions that the claims are addressed at and the relief that we are seeking is, in fact, directed at OPM. And because of that, this is exactly what Congress, in the text of this statute, has given no indication that judicial review should be removed of. Because that's the question for the court. One aspect of the relief that is, which would be an injunction against OPM from doing something that they've already disclaimed that they did and that they say they don't want to do again, and that is direct anybody. Everything else, it seems like, you could get a declaration and another action against just the agencies under my, I think, my hypothetical that I was, which I don't expect would happen, but if you sued an agency and you said you fired all these people because OPM told you, and the agency said, yes, we did, that's exactly why we fired them, it's the only reason we fired them, then that's unlawful. In fact, you very helpfully have the government's concession that that's unlawful, and so those people would be reinstated, and you would also have a declaration that those, that it was improper to do that without OPM being in that lawsuit. So aside from the piece of this lawsuit that is asking for a declaration or an injunction against OPM for something that OPM says it has never done and doesn't want to do, what does OPM need to be in the lawsuit for? So OPM needs to be in the lawsuit to get the order that is binding against OPM telling them not to do this. And they have not fully disclaimed all of the things that we are suing over, Your Honor. That is just not factually true. They have continued to enforce what you talked about as, and I disagree with the description of the performance definition, but they continue to do that. OPM is subject to the APA, and that later enacted CSRA statute does not remove that jurisdiction. Even as to the performance thing, though, like, you know, if somebody was fired for performance, you bring a lawsuit or you bring an agency action saying it was inappropriate because I was not properly fired for performance, and if they came in and they said, well, we fired you for performance because OPM said we had to fire you for performance, you know, and that was their defense, then it seems like, you know, you get a decision on that. Again, it is not clear to me why OPM has to be in that lawsuit to get that relief, unless you want to get some relief against OPM as to the performance thing that OPM — your argument is that OPM can't set performance standards, or it is that OPM can't set performance standards, or that what? Well, first of all, it changed the performance standard and that the performance standard was not really a performance standard. It was protectual. But I think the answer to this question, to short-circuit this, Your Honor, is in the Feds for Medical Freedom v. Biden case. The Fifth Circuit really took this on, this exact question, Your Honor, and the Fifth Circuit looked at that and said, it is not just the relief that you get in the individual circumstances. And that would be exactly the same. The employment actions that were taken as a result of the COVID — the mandatory COVID vaccination policy there would play out exactly the way Your Honor is describing. And the Fifth Circuit said, no, that is not what the CSRA intended. They did not intend to remove the command of judicial review under the APA for these government-wide actions. That is simply not a personnel action that is covered. That's what the Supreme Court has said, this comprehensive scheme. So how do we — how do we square this — kind of this argument with Elgin? Sure. So Elgin, the — the action was taken by the agency with respect to individual employees who then sued and then said it was unconstitutional. That's a very different situation than a government-wide policy, an edict, that's being issued by an actor that is not the agency covering all of the agencies. That has — there has never been any doubt that that type of action by OPM is subject to the APA. And Elgin did not address this question, Your Honor. It did not say what happens when there's a government-wide action subject to the APA, that there's an argument about the CSRA, and whether that later-enacted  There was an argument. The argument in Elgin was that there was an unconstitutional selective service policy, and it has some similarities in the structure of it as to this. And the Supreme Court said that had to be brought to the agency process. Sure. And I will note that Justice Alito dissented from Elgin, saying that that's not the type of claim that should be brought before those agencies. This is just too far afield. I think that was actually correct. But having — but recognizing that, Your Honor, is — is correct, that there are constitutional claims in that case. The point here is there is a existing claim under the APA and ultravirus against OPM, the government-wide actor. And can the later-enacted statute remove what Justice Roberts has called the command of judicial review in the APA? And what textual clues do we have in the CSRA itself? And I got to a couple of them, but I want to make sure that I've listed all of them. First, three references to the APA. It is the government's position that in making the APA applicable to OPM, Congress must have simply forgotten to remove judicial review. That is not a fair reading of what happened in that statute. The Congress that — I mean, we're not — we're not asking whether OPM could ever be sued under the APA. The answer to that is, of course, yes, presumably. But the issue here is what do we do when the OPM action bakes into this whole reinstatement decision that is itself the subject of a comprehensive remedial scheme? And on this, we have no — this is the only case that I'm aware of that is presenting this case, this question. Sure. Your Honor, the MSPB and scheme that we're talking — the scheme we're talking about really is about individual employment actions. The personnel actions are individual employment actions. When the government sends government-wide policies, when OPM does what it does and sets government-wide policies for Federal employees, Congress said it's subject to the APA. That is very, very significant. It did not remove judicial review. In two other places in the statute, it did remove — So this is both. This is both. It's individualized because people did get terminated, but it's also — so I just want to make sure I understand. Your position would be if there's a statute that's passed or something, right, like if there's a statute, then, like in Elgin, that that does not — that then you channel if there's a statute that you're challenging on conscious grounds. And at the other end of the extreme, if you just got fired and it's clear your agency made a decision and you — and nobody else was involved, then obviously that's channeled. But if there's another agency and it makes a decision, then that pulls it out of the channeling. If it makes a decision and — or you can make a claim that some other agency made a decision that's broader than one employee, I guess, then that would — then that pulls it out of the channeling? I'm just trying to make sure I understand where the lines lie. Sure. I think if there is almost certainly, as this Court very recently said, government-wide action subject to the APA is not the — is not the type of action that is a covered personnel action under the CSRA, then it is not channeled. Now, to be fair, it said that in — you're talking about — you're talking about Judge Fletcher's decision in the Doge appeal. That — Yes. For — hopefully you understand. We don't want to talk — We have another name for it. Yeah, yeah. And full disclosure, I'm counsel in that case. But the names are all too similar. So the big difference there is that there — because that one was so early before anything ever happened to any individual employees, there's many, many steps removed from that. It is — it doesn't have the same sort of — as I said earlier, this case involves the type of actions — this case involves the type of actions that clearly would be if I was just an individual employee and I got a thing and said — and I knew nothing about what was supposedly going on and it said you're fired for performance, I would think I needed to go through the process. And then it's — and then it's got the other. So — If I may, Your Honor, if I may, because this is an incredibly important point and it's on my list of corrections that I wanted to make. The actions had already been taken in AFGE v. Trump. There were rifts that had already been sent. There were people who had already been terminated. There were separation dates that were imminent that were enjoined by Judge Ilston in that case.  So you tell me that and I'll take you at your word for that. I did read the decision from our court and it did not seem to turn on any of that at all. It seemed to treat this — I took it as the President and OPM have ordered this thing and it's argued that it's inappropriate and that was the only basis for it. It wasn't — I didn't see it as this kind of case where there were — where the horse had left the barn, so to speak. No. What the — what the Court said is they are challenging defendants' constitutional and statutory authority to direct the Federal agencies to take the actions in the first place. Those actions had already been taken, Your Honor, when that statement was made by this Court. To be clear, by actions you mean the far downstream actions of terminating people. I — I understood that the actions that you're talking about is the President issuing the executive order. That's the action. No, Your Honor. It was talked — the case challenged the RIFs that were being effectuated and implemented pursuant to the executive order through agency RIF and reorganization plans. They had already been issued. They — there were separation dates that were imminent. Those were the actions that this Court was referring to, that the — the directive to take those actions, which came at the highest level, there were APA and ultra-virus claims and they were not channeled. Justice Sotomayor, you know, in her concurrence, she says, you know, I'm with you in spirit, Justice Jackson, but nothing's happened here yet. So I don't understand that statement if — That's not what she said. She said that the claims, that the injunctions are likely to succeed. It only is talking about the — Since the relevant executive order directs agencies to plan reorgs and reductions in forth and resulting in joint — the plans themselves are not before this Court at this stage. So the — The RIF plans were not before the Court at this stage. And those remain to be litigated, as I understand. Those remain to be litigated. And they would never have made that statement if there was no jurisdiction. That — that Supreme Court stay decision does not indicate that the Court did not think that there was jurisdiction over those claims, Your Honor. Mr. Misalny, can I ask — I don't know that the case is moot. I know you argue that. But it doesn't — really, just speaking for myself, it doesn't seem moot. At the same time, I'm kind of wondering what's — what's actually at stake. What's going to happen next here? Because they were ordered — the government was — all we're talking about is the April injunction. We haven't actually covered even the — the other injunction that's in front of us. But in the April injunction, the government was ordered to — to send letters. They did send some letters. And perhaps there's a dispute about whether that was done properly. But that was — some letters were sent. So what's really left here? All the letters were sent, Your Honor, to be — to be clear. The government has confirmed to the district court that it fully complied with that injunction. And the injunction order says, send the letters, and that is it. That is all that — there is nothing that remains of the second injunction. But does this injunction need to be in place? Does the injunction need to be in place? And you got the — the letters — the letters were sent. Sounds like the government wants to maybe have the freedom to send some other letters. But what that would entail, I don't know. And I don't know if that would even violate the injunction either. So, Your Honor, that injunction is moot for that reason. It has been fully effectuated. There is no relief that this court could order that would affect the actions that were taken pursuant to that injunction. That is mootness. The first injunction. We're talking — I believe we're talking about the second injunction, Your Honor. Well, then I definitely disagree with you. But go ahead, and I'll — go ahead. Well, I don't know that it's moot in the sense that the government is under an injunction. And so when someone's under an injunction, we — we usually let them appeal that. But the question I have is, is there a need for the injunction to remain in place? So is there — I think that the point of the mootness doctrine asks whether there's any relief that this court could order. And if the actions have already fully been implemented and cannot be affected by this court's order, then it is — Well, it seems like they want to send some other letter. They want the freedom to send some further letter. I don't know if there's been discussions about what that would even be. So what they've said is they want to tell people that they disagreed. They did that in the letter they sent already, actually, Your Honor. What if they — Okay. No, this is really important. I'm just wondering, is there — are they asking to do something that you would be fine with? I don't know that we would necessarily be fine with it, but we would litigate it in front of Judge Alsup where it should be litigated, because it is not covered by this injunction. The question for this court is whether that injunction has any continuing effect. Yeah, I mean, I think it's — When the injunction says send the letter — I don't think it's — I don't think it's moot. But at the same time, I'm not sure what it's doing, that anybody needs it. So if the question is it's already been implemented, so we should vacate and remand, is that — I'm not following those — This is less a question for the panel, I suppose, and I'm more asking — you know, raising the question for the parties as to whether this injunction — the effect of this injunction — there was a first injunction that led to reinstatement. That was a significant exercise of authority to require agencies to reinstate employees. That has been now stated and perhaps has accomplished the purpose of the injunction anyway. But now we're talking about an injunction with some complicated issues, the upshot of which is the circulation of letters. So it's not as — what's at stake here in the second injunction does seem less. I absolutely agree with you, Your Honor, especially because it has already been effectuated, and the government has not either taken any further action or indicated until this argument that they — or to this Court that they intend to, and that could be litigated in front of Judge Alsop. But would your argument be, if the government came in tomorrow and said, Judge Alsop, we are — tomorrow we're going to send out a letter to everybody saying that you were actually fired for performance reasons, I assume your argument to Judge Alsop would be, that's inconsistent with your injunction.   We would say that's inconsistent with the — we would move — we would include that in the summary judgment that is — that is teed up for final resolution.  You wouldn't say they were violating the injunction by issuing a letter to saying, the earlier letter where we said you weren't fired for performance, that was wrong. You were fired for performance.   Whether or not their further action is unlawful is a separate question for the Court. It is not — we would — we have not argued that anything that they have done does not comply with this existing injunction, Your Honor. That's a separate question. Counsel, you have four and a half minutes over your time. So I'm going to ask you to please wrap up. Sure. Very happily to. I think that the thorniness of these issues that we've been discussing today is absolutely reason why, and you're — Judge Brass, your — your point is well taken about the continuing — what really is the continuing effect of this injunction. It's very good reason why this Court should, if not rule that this appeal is moot, it will very soon be under Grupo Mexicano and should exercise its prudential mootness authority to — to dismiss the appeal. Thank you, counsel. We'll hear from the government. You have two minutes. Just a couple of brief points. First, as to plaintiff's last suggestion that they would prefer dismissal of this appeal as moot, I would reiterate that the government does continue to be bound by an injunction which imposes the risk of being called before the district court for noncompliance with the injunction if we were to send these types of letters. This injunction, the second injunction, enjoins OPM from ordering other agencies to terminate their employees and from — and enjoins them from using the template letter that they originally used. My understanding in the summary judgment briefing that is pending is that OPM has taken — now taken the position, which we're not going to get into substantively today, is not contested that they can't take the action that Judge Alsup found that they took, but I think in the summary judgment briefing, the government's actually walking that back a bit and is — and is taking the position that OPM does have some authority to direct the termination of employees. So it — it strikes me that we have to look at that mootness with an eye towards what happens if these injunctions go away, given that government's taking this other position at the summary judgment level. Your Honor, just to be clear about the government's position, the government's position is that OPM lacks authority to terminate an employee of another agency. It cannot effectuate a termination outside its own walls. Well, I'm just looking at page 15 of your brief in the summary judgment, and there are four different reasons that you responded in the ultra-virus argument, and I don't see it at all comparable to the argument that you made here. Your Honor, if I understand the question correctly, as to what that means for mootness here, the injunction continues to bind the government and preclude the government from sending letters that it could otherwise take if it were not bound by this injunction. And that alone is sufficient to keep this case from being moot, because the government is precluded from taking action that it would otherwise be lawfully entitled to take. All right. If I may make just one other point. You bet. So the plaintiffs, again, repeatedly emphasized that because OPM is subject to the APA, that means that channeling never can apply to a claim against OPM by anyone other than its own employees. And I think that is — just flies in the face that all of these other agencies are also covered by the APA, and a provision making an agency subject to the APA does not defeat channeling or somehow become a textual hook against the channeling scheme. And likewise, OPM is permitted to intervene in these administrative review processes when government-wide rules and regulations are at issue. Congress expressly made that provision. And I think that if plaintiffs' theory were correct, that in any case where there's a government-wide rule, the channeling scheme doesn't apply, then there would be no reason to empower OPM to intervene in cases where government-wide rules and regulations are at issue. And so if we're looking to the comprehensiveness of the scheme, the scheme provides an avenue for OPM to intervene when one of these government-wide rules or regulations is at issue. And so I think that's particularly relevant as well. All right. I'm going to stop you there. We've been awfully generous with that time clock today. It's a very important case. Your briefing was excellent, and we appreciate your argument and advocacy very much. We'll stand and recess. All rise.
judges: CHRISTEN, BRESS, VANDYKE